Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000211
28-FEB-2019
08:04 AM

NO. CAAP-18-0000211

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DL, Plaintiff-Appellant, v.
CL, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 16-1-1014)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Plaintiff-Appellant DL (**DL**) appeals from an April 26,
2018 Divorce Decree and challenges the April 26, 2018 First
Amended Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)]
and Order Regarding: June 21, 2017 Order Re: Defendant's Motion
for Pre-Decree Relief; March 13, 2016 Order Re: Evidentiary
Hearing; and March 16, 2018 First Amended Order Re: Evidentiary
Hearing (**Amended Order**),[1] as well as the April 23, 2018 [FOFs],
[COLs] and Order Regarding Plaintiff's Motion to Disqualify

---

[1]     DL also challenges numerous preceding findings, conclusions, and orders entered by the Family Court.

Counsel (**Order Denying Disqualification**), all entered by the Family Court of the First Circuit (**Family Court**).[2]

DL raises two points of error on appeal, contending that the Family Court erred and abused its discretion in: (1) awarding Defendant-Appellee CL (**CL**) sole physical custody of the parties' children (**Children**) and in permitting the Children's relocation to Arizona; and (2) entering the Order Denying Disqualification.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve DL's points of error as follows:

(1) DL argues that the Family Court erred in awarding CL sole physical custody of the Children and permitting their relocation to Arizona because the evidence did not establish that it was in the Children's best interest to relocate to Arizona or away from DL, there was neither a finding of family violence made against DL nor any evidence of family violence, the Family Court erred in relying on the custody evaluator's purported recommendation in favor of relocation, and the Family Court should not have relied on evidence outside the record in deciding custody and relocation. DL also argues it was error for the

---

[2]     The Honorable Gale L.F. Ching presided.

Family Court to "rubber-stamp" all FOFs, COLs, and written orders submitted by CL's attorney.

The standards that guide the Family Court's decision regarding custody, including the relocation of children with a parent, are well-established. The Hawaiʻi Supreme Court has repeatedly affirmed that "[u]nder HRS § 571-46, the sole issue in a custody determination is the child's best interests, which is an issue of ultimate fact." Fisher v. Fisher, 111 Hawaiʻi 41, 47, 137 P.3d 355, 361 (2006) (citation omitted). HRS § 571-46(b) sets forth a non-exclusive list of factors the court must consider in determining the best interest of children, and "the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met." Fisher, 111 Hawaiʻi at 50, 137 P.3d at 364. Regarding the issue of "family violence," HRS § 571-46(a) (2018) provides, in relevant part:

> (9) In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence. In addition to other factors that a court shall consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:
> (A) The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;
> (B) The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of

3

physical harm, bodily injury, or assault to another person; and

(C)    If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation;

(10)    A court may award visitation to a parent who has committed family violence only if the court finds that adequate provision can be made for the physical safety and psychological well-being of the child and for the safety of the parent who is a victim of family violence[.]

HRS § 571-46(a)(9)-(10).

"Family violence" means the occurrence of one or more of the following acts by a family or household member, but does not include acts of self-defense:

(1)    Attempting to cause or causing physical harm to another family or household member;

(2)    <u>Placing a family or household member in fear of physical harm;</u> or

(3)    Causing a family or household member to engage involuntarily in sexual activity by force, threat of force, or duress.

HRS § 571-2 (2018) (emphasis added).

The Amended Order, which followed thirteen evidentiary hearing days, includes the following:

7.    [CL] credibly testified that prior to the Parties move to Hawaii, [DL] experienced bouts of anger and acting out violently, including, but not limited to separate instances in which a computer and a vase were broken by [DL] in the presence of [CL].

. . . .

11.    [CL] credibly testified that both before and during the course of the marriage, [DL] verbally abused her and engaged in emotional and physical acts of violence in the presence of [CL].

12.    [CL] also credibly testified that during the marriage [DL] engaged in emotional and physical acts of violence in the presence of the Minor Children.

13.    <u>The credible testimony at trial confirms [DL] engaged in acts of family violence.</u>

14.    [CL] credibly testified that she first began to notice [DL's] anger problems in December of 2005.

15. The evidence and testimony at trial confirms that after the parties moved to Hawaii in October of 2016, [DL's] outbursts of anger and violence increased in frequency and intensity.

16. [CL] credibly testified that she made extensive attempts to address her concerns directly with [DL] without success, and then attempt to resolve her concerns with [DL's] family.

17. Despite the efforts of [CL], [DL's] angry outbursts directed at her and Minor Children continued to increase.

18. The credible testimony at trial confirms that [DL] engaged in several acts of violence after moving to Hawaii in October of 2016.

19. These acts include, but or not limited to an incident in which a [sic] [DL] threw a bottle that broke a window in the Presence of [CL].

20. Among other acts, the credibl[e] testimony at trial confirms that on or about July 8, 2016, [DL] picked up [minor child], swore in his face, and shook him.

21. Lori Love, PH.D. was appointed as the Custody Evaluator ("CE") in this case to evaluate issues of domestic violence, relocation of [CL], physical custody, legal custody and visitation.

22. The CE credibly testified that based upon her investigation and conversations with [DL] and [CL], it is her expert opinion that [DL] was the perpetrator of domestic violence toward [CL] and Minor Children.

23. During his testimony, [DL] acknowledged that, through the course of marriage, he experienced angry outbursts which were inappropriate.

24. No allegations of violence or emotional abuse by [CL] were described by any witness.

25. On or about July 9, 2016, [CL] fled with the Minor Children to Arizona in order to protect herself and the Minor Children.

26. [CL] credibly testified that the move to Arizona was based on her desire to protect herself and Minor Children from [DL's] escalating pattern of abuse.

27. Defendant's Mother, . . . and sister, . . . credibly described [CL's] traumatized condition upon her arrival in Arizona in July 2016.

28. The CE credibly testified that, based on her investigation, it is her e[x]pert opinion that [CL] fled Hawaii based on her own belief that doing so was necessary to protect herself and the Minor Children.

29.     After a day-long evidentiary hearing on September 19, [2016],[3] this Court found, among other things, that [CL] fled to Arizona due to the threat of violence against her and Minor Children, awarded sole temporary physically custody of Minor Children to [CL], and allowed her to remain in Arizona with the Minor Children.

(Emphasis added).

The Family Court's finding of family violence created a rebuttable presumption that it is detrimental to the Children and not in the best interest of the Children to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence, in this case, DL. See HRS § 571-46(a)(9). In addition, because the Family Court found that family violence caused CL's relocation to Arizona with the Children, that fact was not weighed against her in the Family Court's custody determination. See HRS § 571-46(a)(9)(C). The COLs in the Amended Order included:

4.     Pursuant to § 571-46(a)(9)(A), H.R.S., the safety and well-being of the children and the parent who is the victim of family violence are the primary factors when evaluating custody.

5.     Pursuant to § 571-46(a)(11)[sic], H.R.S. if a party is absent or relocates because of an act of family violence by the other party, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation.

6.     In the instant case, it is in the best interest of Minor Children for them to Relocate to reside with [CL] in Arizona, considering among other things, CE's credible testimony that:

a. There remains a rebuttable presumption against [DL] having custody based on the Court's finding of family violence.

---

[3]     The Amended FOF 29 mistakenly listed the year of the hearing as 2002.

6

Contrary to DL's arguments on appeal, the Family Court made express findings in its Amended Order that "family violence" had occurred and its determinations are supported by substantial evidence in the record. See, e.g., Inoue v. Inoue, 118 Hawai'i 86, 101, 185 P.3d 834, 849 (App. 2008) ("the question on appeal is whether the record contains substantial evidence supporting the family court's determinations, and appellate review is thereby limited to assessing whether those determinations are supported by credible evidence of sufficient quality and probative value") (citation omitted). For example, CL, whom the Family Court found to be credible, testified regarding DL's anger and continuing pattern of acting out against her and the Children both emotionally and physically and testified that these actions caused her increasing concern for her and the Children's welfare. CL testified regarding specific acts by DL, including one act that occurred shortly before and precipitated her decision to leave with the Children for Arizona. CL testified that on July 8, 2016, DL became frustrated with one of the Children because the child was crying and did not want to put on his shoes. DL cursed at the child. The child sat down and cried, and DL then picked him up, held him above his head, and shook him. CL testified that she was terrified and that DL's behavior caused her to become concerned for the Children's emotional and physical safety. CL testified that she was concerned about DL's mental

health and decided she had to leave for the safety of the Children.

In a Custody Evaluation Report that was submitted into evidence, Dr. Lori Love (**Dr. Love**), the custody evaluator, included:

> The nature of the aggression between [DL] and [CL] was largely a result of the marital conflict. While it is clear both parties participated in the arguing and animosity it appears only [DL] escalated to a place where property such as his computer, a vase, and a window were broken. The frequency of [DL's] use of inappropriate language in front of the children and having a physical display of anger appeared to be increasing while the couple resided in the same home. [CL] and [DL] are both responsible for their conflict but [DL] is the one who escalated this conflict to inappropriate levels . . . It appears [Child] has experienced this confect and was emotionally impacted by the water bottle breaking the window. While this examiner does not believe [Child] is in any physical danger from his father, the emotional consequences of being exposed to such violence are detrimental to his developmental process.

Dr. Love's testimony also supported the Family Court's finding that family violence had occurred. The Family Court found Dr. Love to be a credible witness.

"Family violence" includes "[p]lacing a family or household member in fear of physical harm." HRS § 571-2. The testimony and other evidence in the record is sufficient for the Family Court to have reasonably inferred that DL placed CL and at least one of the children in fear of physical harm. See In re Doe, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005) (quoting State v. Lubong, 77 Hawai'i 429, 432, 886 P.2d 766, 769 (App. 1994) (explaining that the appellate courts "give due deference to the right of the trier of fact 'to determine credibility, weigh the

evidence, and draw reasonable inferences from the evidence adduced'")).

DL argues that the actions described to support the finding of "family violence" are nothing more than the permissible imposition of discipline on a child by a parent, citing Hamilton v. Lethem, 126 Haw. 294, 302, 270 P.3d 1024, 1032 (2012). Hamilton discussed the right of parents to discipline their children, codified in part by HRS § 703-309 (2014), which provides that certain uses of force are justifiable by a parent in disciplining a child as a defense to abuse of a child. See i.d. However, the actions of DL described by CL and found credible by the Family Court do not constitute the imposition of discipline on children but rather lashing out emotionally and physically from a place of anger. See Tortorello v. Tortorello, No. CAAP-13-0004373, 2015 WL 1311496 at *7 (Haw. App. Mar. 23, 2015) (mem. op.) (HRS § 703-309(1) requires that force used is "employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct").

DL also argues that "the totality of the evidence established that [DL] was a good father and committed to his children." DL points to testimony in the record showing that he is a good father. However, the question before this court is whether there is substantial evidence in the record to support

9

the Family Court's best interest determination. <u>Inoue</u>, 118 Hawai'i at 101, 185 P.3d at 849. It is not this court's role to re-weigh the evidence or substitute our judgment for the Family Court's judgment. <u>See</u> <u>In re Doe</u>, 95 Hawai'i 183, 197, 20 P.3d 616, 630 (2001).

Regarding the relocation determination, the Family Court found that it is in the best interest of the children to relocate and reside with CL in Arizona, citing Dr. Love's "credible testimony" that:

a. There remains a rebuttable presumption against [DL] having custody based on the Court's finding of family violence.

b. Minor Children are most strongly attached to [CL];

c. Removing Minor Children from [CL's] care would have immediate and long-term detrimental impacts on there well-being;

d. Minor Children will benefit greatest being in [CL's] primary care;

e. [CL] is the most psychologically stable figure for Minor Children;

f. The history of abuse that created the necessity for [CL] to flee Hawaii in July 2016 must be considered and should not be held against her in her decision to leave Hawaii;

g. [CL] has provided an extensive access plan for [DL] to see Minor Children both in Phoenix and in Hawaii;

h. [CL] is resilient, organized, and has excellent life management skills, superior to [DL's] to enable her to provide for herself and children and facilitate their contact with [DL];

i. [CL] has secured employment in Phoenix, Arizona;

j. Phoenix offers excellent educational, social and extracurricular opportunities for Minor Children; and

k. Phoenix and its surrounding areas hosts an extensive support network for [CL], including numerous relatives, a supportive church community and many family friends.

DL cites other evidence in the record, which he submits supports a different decision regarding relocation of the Children. However, it is the Family Court's role to hear the evidence, gauge credibility, weigh the evidence, and make a determination as to the best interest of the Children. Inoue, 118 Hawai'i at 101, 185 P.3d at 849. On the record in this case, we cannot conclude that the Family Court clearly erred or abused its discretion in determining that allowing relocation was in the Children's best interests.

DL argues that the Family Court's reliance on Dr. Love's evaluation of attachment was a "delegation of the court's fact-finding duty to the Custody Evaluator without making the correct and sufficient findings itself." We note that Dr. Love was stipulated by DL to be an expert psychologist who is an expert in child custody and visitation. HRS § 571-46(a)(4) specifically provides that custody evaluators shall make investigations and create reports and be subject to cross-examination thereon. Here, the Family Court found Dr. Love's reports and testimony credible and relied on her expert opinion, but the Family Court also heard and considered the testimony of a number of other witnesses over the course of the evidentiary hearing, and we cannot conclude that the Family Court delegated its fact-finding to Dr. Love.

DL argues that the Family Court's findings that CL was living in Arizona and was employed as an attorney were based on

11

evidence not appearing in the record. However, CL testified that at the time of her testimony she had received a job offer from Banner Health as a contract management specialist. Entered into evidence was the email and letter containing the job offer. CL testified at trial regarding an offer on December 14, 2017, and she testified she had accepted the offer and was set to start at that position on January 2, 2018. CL testified that the position was appealing to her because it was the opportunity to work for a big company with some stability and it provided the chance for growth as well as good benefits. The FOFs set forth in the Amended Order are supported by CL's testimony at trial.[4]

Finally, DL argues that the Family Court improperly adopted the findings, conclusions, and various interim orders drafted by CL's counsel. DL provides no authority for the proposition that it is inappropriate for the Family Court to adopt orders and findings drafted by the parties, and we find none. To the extent that DL submits that findings have been entered in error, that contention is subject to the clearly erroneous standard of review and we have reviewed the challenged findings accordingly. See Brutsch v. Brutsch, 139 Hawai'i 373, 381, 390 P.3d 1260, 1268 (2017). DL further argues that the Amended Order contains obvious errors. However, DL fails to argue that any of the "obvious errors" merit vacating the Family

---

[4]     DL has not identified which specific FOF(s) was or were purportedly based on facts outside the trial court record.

12

Court's custody determination. Minor errors in a court's findings that are harmless do not warrant relief. See, e.g., Dupree v. Hiraga, 121 Hawai'i 297, 320 n.28, 219 P.3d 1084, 1107 n.28 (2009) ("FOF No. 13, which states that McComber testified that he 'ha[d] not seen Mr. Kaho'ohalahala on Lana'i,' is therefore clearly erroneous. However, we find the error was harmless. . . ."); Kahawaiolaa v. United Airlines, Inc., No. 30580, 2012 WL 54497 at *2 (Haw. App. Jan. 9, 2012) (SDO) ("Regardless of whether LIRAB's FOFs 14 and 15 are clearly erroneous, any error was harmless"); Kawamoto v. NHC, Inc., No. 29295, 2009 WL 3350309 at *5 (Haw. App. Oct. 19, 2009) (SDO) (stating that a challenged LIRAB finding played no "meaningful role" in LIRAB's determination regarding claimant's injury and thus any potential error was harmless). We conclude that none of the "obvious errors" referenced by DL played any meaningful role in the Family Court's custody determination and thus any such error was harmless.

(2) DL argues that CL's attorney was disqualified from representing CL due to a conflict of interest based on CL's attorney having hired a paralegal who purportedly had worked on this case on DL's behalf and therefore possessed privileged and confidential information.

The Hawai'i Rules of Professional Conduct (**HRPC**) Rule 1.10 pertains to the imputation of conflicts of interest. HRPC Rule 1.10(a) states, in relevant part:

13

(a)  While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules[ ] . . . 1.9 [re Conflict of Interest: Former Client] . . . of these Rules, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Comment 4 to Rule 1.10 states:

[4]  The Rule in paragraph (a) also does not necessarily prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary.  Nor does paragraph (a) necessarily prohibit representation if the lawyer is prohibited from acting because of the events before the person became a lawyer, for example, work that the person did while a law student.  Such persons, however, may be screened where effective from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect.

Although the comments to the HRPC rules are provided for interpretive assistance and are not binding on the courts, they are often used to provide such assistance.  See, e.g., Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 109 n.19, 176 P.3d 91, 108 n.19 (2008) (referencing HRPC Rules 5.1 and 8.3(a) and commentary);  State v. Baron, 80 Hawai'i 107, 115-16, 905 P.2d 613, 621-22 (1995) (referencing HRPC Rule 3.8 and comment).  "Screen[ing]" is defined in HRPC Rule 1.0(l) as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect the information that the isolated lawyer is obligated to protect under these Rules or other law."

Here, it is undisputed that Paul Tomar of the law firm Ashford & Wriston represented DL in the divorce action until

January 4, 2017, when that firm's involvement as counsel for DL ended. It is also undisputed that a paralegal from Ashford & Wriston, who at least had been copied on confidential communications involving this case, applied for a position with Porter McGuire Kiakona & Chow, LLP (**PMKC**) on May 26, 2017, and was hired and began working at PMKC on September 12, 2017.

After hearing testimony and taking evidence, the Family Court found, *inter alia*, that PMKC was aware from the outset that the paralegal in question had a conflict in this case and that she "would be prohibited from any work on or involvement in that case." In addition, "at no time did PMKC attempt to inquire about case-specific details of [the paralegal's] involvement in any cases." The Family Court found that "[u]pon her start date, [CL's attorney] reminded [the paralegal] that she was prohibited from any involvement in [CL's] case in any form and specifically instructed that she would be excluded from any internal and external emails and any other communications regarding the case, any meetings with the trial team, any meetings with the client and witnesses and any drafting, revising or filing of any pleadings or other documents relevant to the case." At the hearing on the Motion to Disqualify, the Family Court found credible the paralegal's testimony that "since her interview with PMKC to the present, she has been completely excluded from any involvement in [CL's] case at PMKC, to the point that she was excluded from all emails, correspondence and telephone calls, her

15

computer cannot access [CL's] case file and [the paralegal] has no idea where the files regarding [CL's] case are stored. [The paralegal] also confirmed that she has had no contact with [CL] or any witnesses in the case and has not been a part of any meetings related [to] the case." The paralegal's testimony was corroborated by Kapono Kiakona, a co-managing partner for PMKC, that the Family Court also found credible.

DL points to an alleged discrepancy in the testimony regarding the screening process, i.e., that at one point the paralegal testified that she did not believe this case was specifically mentioned during her interview process with PMKC. Aside from that inconsistency, the Family Court's findings with respect to the credibility determinations and FOFs regarding the screening procedures adopted and used by PMKC in this case appear to be undisputed. DL argues that the screening was not sufficient to avoid disqualification. Upon review of the record on appeal and the Family Court's findings, we cannot conclude that the Family Court's rejection of this argument was wrong. Accordingly, we conclude that the Family Court did not abuse its discretion in entering the Order Denying Disqualification.

For these reasons, the Family Court's April 26, 2018 Divorce Decree and April 23, 2018 Order Denying Disqualification, as well as all related and preceding orders, are affirmed.

DATED: Honolulu, Hawai'i, February 28, 2019.

On the briefs:

Rebecca A. Copeland,
for Plaintiff-Appellant.

Crystal Waitkus Leas,
Defendant-Appellee, *Pro Se.*

Presiding Judge

Associate Judge

Associate Judge